## Harris v. Wilson, Mayor, et al.

*Saul, Ewing, Remick & Saul,* for plaintiff.
*J. D. Burke,* for defendants.

PARRY, J., July 7, 1937.—This case was argued before me on a bill in equity and the answer thereto. From the pleadings, I make the following

### Findings of fact

1. Some time prior to May 6, 1937, the City of Philadelphia, through the department of city transit, requested bids for work in connection with the completion of the substation of the South Philadelphia Subway, located at Juniper and McKean Streets, known as contract no. 234, department of city transit.

2. On April 29, 1937, Gordon R. Exley, director of city transit, in accordance with the ordinance of council approved October 18, 1932 (ordinances and city solicitor's opinions, 1932, p. 191), published the following list of qualified bidders from whom bids would be received on the said contracts:

John Bordon and Bro., 637 N. 19th Street
Nicholas Connolly, Inc., 1404 N. 18th Street
Bugger O'Hara Company, 514 W. Champlost Street
Edw. F. Roberts, 2622 Columbia Avenue
Louis J. Sommer and Son, 2436 Brown Street.

3. On or about May 6, 1937, bids were received from three of the persons entitled to bid on the said contract,

to wit, Nicholas Connolly, Inc., Edward F. Roberts, and Louis J. Sommer and Son, the said bids being as follows:

Nicholas Connolly, Inc........... $20,127.00
Edward F. Roberts.............. 19,963.00
Louis J. Sommer and Son......... 20,559.10

4. S. Davis Wilson, Mayor of the City of Philadelphia, has directed Gordon R. Exley, director of city transit, to award the contract to Nicholas Connolly, Inc., instead of to the said Edward F. Roberts, who is the lowest responsible bidder.

5. Prior to, at the time of and subsequent to the time of the submission of said bids, Edward F. Roberts was an incumbent of the office of magistrate in the City of Philadelphia.

### Discussion

The single question involved is whether a magistrate of Philadelphia is a city officer or employe. If he is, then he is clearly precluded from entering into contracts with the city by section 3 of article XX of the City Charter Act of June 25, 1919, P. L. 581. If he is not such an officer or employe, there appears to be no legal prohibition against his making such a contract.

Established by the Constitution, magistrates' courts are as much a part of our judicial system as the Supreme Court itself. Changes may be made by the legislature in the municipal government but the magistrates cannot be affected thereby. They are not subject to municipal regulation or control, and, while they are paid by the city, it can neither fix the amount of, nor withhold or postpone the payment. These courts, created and controlled by the Constitution, to some extent under its allowance may be regulated by the legislature. The judges who sit there may be removed in the same way as judges of courts of record, and in no other.

In short, the city did not create, cannot control, and may not abolish this office, and its incumbent performs no function of municipal administration. He is neither more

nor less than a judge before whom may come all litigants including the municipal corporation itself.

It is urged on behalf of the city that since certain acts of assembly relating to magistrates refer to their courts as "Magistrates' Courts of the City of Philadelphia" it necessarily follows that they must be considered as city officers; but the reasons that forbid such an inference are too strong, quite apart from the fact that this need be no more than a designation of the jurisdictional limits of the courts. The mere fact that an officer performs his duties within the boundaries of a certain political subdivision does not make him an officer or employe of that subdivision: Commonwealth ex rel. v. Collier, 213 Pa. 138.

I am not unmindful of the anomalous situation that may thus exist. To permit a magistrate to contract with the city appears to me to involve a gross impropriety. I see no reason why he should not be required by law to conform to the same standard of conduct as any other judicial officer, but this is a matter for the legislature alone.

### Conclusions of law

1. A magistrate is not an officer or employe of the City of Philadelphia.

2. Edward F. Roberts is not disqualified by law to make a contract with the City of Philadelphia, and as the lowest responsible bidder is entitled to be awarded the contract for work in connection with the completion of the substation of the South Philadelphia Subway, located at Juniper and McKean Streets, known as contract no. 234, department of city transit.

### Decree nisi

And now, July 7, 1937, upon consideration of the foregoing case, it is hereby ordered, adjudged, and decreed:

1. That the City of Philadelphia, S. Davis Wilson, Mayor of the City of Philadelphia, and Gordon R. Exley, director of city transit, are perpetually restrained from

executing a contract with the said Nicholas Connolly, Inc., or any other person than the said lowest responsible bidder, to wit, Edward F. Roberts, for the work covered by contract no. 234; and defendant Robert C. White is perpetually restrained from countersigning such contract entered into with any bidder other than the said Edward F. Roberts.

2. That the City of Philadelphia pay the costs of these proceedings.

The prothonotary is directed to enter a decree nisi and to notify the parties of the filing of this adjudication and that unless exceptions are filed thereto within 10 days he shall enter a final decree in accordance herewith.

NOTE.—Exceptions to this decree were dismissed without opinion on August 6, 1937.